IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| DRAYTON D. BERKLEY, d/b/a BERKLEY LAW FIRM PLLC, | ) ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) | No. 2:17-cv-02909-SHM-dkv |
| JOSEPH C. WILLIAMS, | ) ) ) | |
| Defendant. | ) ) ) | |

**ORDER**

This is a dispute about attorney's fees.  Before the Court are the parties' cross-motions for summary judgment.

The first motion before the Court is Defendant Joseph C. Williams's November 1, 2019 Motion for Summary Judgment.  (ECF No. 49.)  Plaintiff Drayton D. Berkley responded on December 8, 2019.  (ECF No. 56.)  Williams replied on December 18, 2019. (ECF No. 57.)

The second motion before the Court is Berkley's November 1, 2019 Motion for Summary Judgment.  (ECF No. 51.)  Williams responded on November 27, 2019.  (ECF No. 52.)  Berkley did not file a reply.

For the following reasons, Williams's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. Berkley's Motion for Summary Judgment is DENIED.

## I.  Background

Berkley is an attorney who is licensed to practice law in Mississippi and Tennessee. (Pl.'s Resp. to Def.'s Statement of Undisputed Material Facts, ECF No. 56-2 ¶ 4.) From 1996 to 2005, Berkley practiced law with firms in Mississippi and Tennessee, where he focused on insurance law, admiralty law, civil rights law, and plaintiffs' work. (Id. ¶¶ 5-6.) In 2005, Berkley started his own practice. (Id. ¶ 7.) As a sole practitioner, he practices primarily personal injury law. (Id. ¶ 12.)

Beginning in 2008, Berkley represented Williams, several of Williams's family members, and Williams's automobile sales business in a suit in the Chancery Court of Shelby County, Tennessee, in which the plaintiff, Regions Bank, alleged that Williams and the other defendants conspired with a Regions Bank employee to authorize illicit car loan approvals. (Id. ¶¶ 1, 13.) Berkley charged a $4,000 flat fee to defend Williams through the summary judgment phase of the Chancery Court suit and an additional $12,000 flat fee to defend Williams through trial. (Id. ¶¶ 14, 17.) Williams paid those fees. (Id. ¶ 18.) The Chancery Court suit proceeded to a bench trial. (Id. ¶ 20.) At that trial, the chancellor found Williams liable and awarded

2

Regions Bank $6,000,000 in damages and title to Williams's home. (Id. ¶ 22.)

Berkley contends that, after the bench trial in the Chancery Court suit, Berkley agreed to represent Williams in an appeal of the Chancery Court suit at the "market rate." (Id. ¶ 23.) Berkley and Williams did not discuss what the "market rate" was. (Id. ¶ 24.) Berkley's fee arrangement with Williams for the appeal of the Chancery Court suit was not in writing. (Id. ¶¶ 25, 74.) From January 2013 to August 2014, Berkley represented Williams in the appeal. (Id. ¶ 27.) The Tennessee Court of Appeals affirmed the Chancery Court's decision. (Id. ¶ 30.)

Between 2012 and 2014, in addition to the appeal of the Chancery Court suit, Berkley represented Williams in three other proceedings at the unspecified "market rate" Berkley and Williams had agreed on for the appeal of the Chancery Court suit:

First, Berkley represented Williams in a forcible entry and detainer ("FED") action brought by Regions Bank against Williams in the General Sessions Court of Shelby County, Tennessee. (Id. ¶¶ 32-36.) Berkley filed a motion to dismiss the FED action, which was denied. (Id. ¶ 39.) Regions Bank was successful in the FED action. (Id. ¶ 40.)

Second, Berkley represented Williams in the filing of a writ of certiorari and supersedeas[1] in which Williams sought to stay enforcement of the judgment in the FED action pending appeal. (Id. ¶¶ 45, 47.) The writ of certiorari and supersedeas was dismissed. (Id. ¶ 49.)

Third, Berkley represented Williams in a criminal action in the Criminal Court of Shelby County, Tennessee, in which the State of Tennessee indicted and prosecuted Williams for sales tax fraud. (Id. ¶ 50.) The criminal action proceeded to a six-day jury trial that resulted in a hung jury. (Id. ¶ 55.) Berkley subsequently withdrew from representing Williams in the criminal action. (Id. ¶ 56.)

In addition to representing Williams, Berkley assisted Williams's daughter, Alexis Williams, in a separate matter in her bankruptcy proceeding. (Id. ¶ 41.) At Williams's request, Berkley responded to a motion to lift stay filed in that proceeding. (Id.)

There was no separate fee arrangement between Berkley and Williams for the FED action, the writ of certiorari and supersedeas, the criminal action, or the bankruptcy work. (Id.

---

[1] A writ of certiorari and supersedeas "stay[s] the writ of possession" in an FED action in Tennessee and allows the "unsuccessful defendant [] to retain possession of the property" while "review in [Tennessee] circuit court" proceeds. CitiFinancial Mortg. Co. v. Beasley, No. W2006-00386, 2007 WL 77289, at *4 (Tenn. Ct. App. Jan. 11, 2007) (citing Tenn. Code Ann. § 29-18-129).

¶¶ 34, 36, 44, 48, 53-54.)   For each, Berkley simply continued to work for Williams at the unspecified "market rate" that Williams had agreed to pay for the appeal of the Chancery Court suit.  (See id.)

In December 2013, Berkley sent Williams an invoice for his work on the appeal of the Chancery Court suit; the FED action; the writ of certiorari and supersedeas; and Alexis Williams's bankruptcy (collectively, the "civil matters").  (Id. ¶ 57.)  The December 2013 invoice charged Williams for the work Berkley performed on the civil matters at a rate of $500 an hour.  (Id. ¶¶ 58-59.)   The December 2013 invoice charged Williams for paralegal work performed on the civil matters by Linda Berkley, Berkley's wife, at a rate of $180 an hour.  (Id. ¶¶ 60-61.)  In the December 2013 invoice, Berkley charged Williams a total of $67,669.28 for the work performed on the civil matters.  (ECF No. 56-4 at 9.)   In December 2013, Williams presented Berkley with an automobile and a watch as payment toward the fees owed on the civil matters.  (ECF No. 56-2 ¶ 69.)   Berkley accepted those items.  (Id.)

In March 2014, Berkley sent Williams an invoice for his work on Williams's criminal matter.  (Id. ¶ 57.)  The March 2014 invoice charged Williams for the work Berkley performed on the criminal matter at a rate of $500 an hour.  (Id. ¶ 67.)   The March 2014 invoice charged Williams for paralegal work performed

by Linda Berkley at a rate of $200 an hour.  (ECF No. 56-4 at 12-13.)  In the March 2014 invoice, Berkley charged Williams a total of $80,450 for the work performed on the criminal matter. (Id. at 13.)

On December 16, 2017, Berkley filed his Complaint against Williams.  (ECF No. 1.)  On April 9, 2019, Berkley filed an Amended Complaint.  (ECF No. 35.)  In the Amended Complaint, Berkley asserts two claims against Williams: (1) a breach of contract claim for failure to pay legal fees; and (2) in the alternative, a quantum meruit claim for the value of the legal services Berkley performed for Williams.  (Id. ¶¶ 7-8.)  Berkley seeks $149,119.28 in contract damages, plus pre- and post-judgment interest.  (Id. ¶ 9.)

The parties filed cross-motions for summary judgment on November 1, 2019.  (ECF Nos. 49, 51.)

## II.  Jurisdiction and Choice of Law

The Court has diversity jurisdiction under 28 U.S.C. § 1332. Berkley is a resident citizen of Tennessee.  (ECF No. 35 ¶ 1.) Williams is a resident citizen of Texas.  (Id. ¶ 2.)  Berkley alleges that the amount in controversy exceeds $75,000.  (Id. at 1 n.1.)  "[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938); see also Charvat v. NMP, LLC, 656 F.3d 440, 447 (6th Cir. 2011).

6

State substantive law applies to state law claims in federal court.  See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-80 (1938). When there is no dispute that a certain state's substantive law applies, the court need not conduct a choice-of-law analysis sua sponte.  See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998).  The parties assume in their cross-motions for summary judgment that Tennessee substantive law governs Berkley's claims.  (See ECF No. 49-1 at 7; ECF No. 51-1 at 2-4.) The Court applies Tennessee law to Berkley's claims.

## III. Standard of Review

Under Federal Rule of Civil Procedure 56, a court must grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  The moving party must show that the nonmoving party, having had sufficient opportunity for discovery, lacks evidence to support an essential element of its case.  See Fed. R. Civ. P. 56(c)(1); Peeples v. City of Detroit, 891 F.3d 622, 630 (6th Cir. 2018).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial.  See Fed. R. Civ. P. 56(c).  "A genuine dispute exists when the plaintiff presents significant probative evidence on which a reasonable

jury could return a verdict for her." <u>EEOC v. Ford Motor Co.</u>, 782 F.3d 753*,* 760 (6th Cir. 2015) (en banc) (quotation marks omitted).  The nonmoving party must do more than simply "'show that there is some metaphysical doubt as to the material facts.'" <u>Lossia v. Flagstar Bancorp, Inc.</u>, 895 F.3d 423, 428 (6th Cir. 2018) (quoting <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 586 (1986)).  The nonmovant must identify specific evidence in the record sufficient to establish a genuine issue for trial.  <u>See</u> Fed. R. Civ. P. 56(c)(1); <u>Hanson v. Madison Cty. Det. Ctr.</u>, 736 F. App'x 521, 527 (6th Cir. 2018).

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." <u>FDIC v. Jeff Miller Stables</u>, 573 F.3d 289, 294 (6th Cir. 2009) (quotation marks and citations omitted).

## IV.  Analysis

### A.   Williams's Motion for Summary Judgment

#### 1.   Berkley's Evidentiary Objections

In his response to Williams's Motion for Summary Judgment, Berkley raises evidentiary objections to two paragraphs in a declaration by Williams and a corresponding paragraph in Williams's Statement of Undisputed Material Facts.  (<u>See</u> ECF No. 56-5; <u>see also</u> Williams Declaration, ECF No. 50-1 ¶¶ 9-10; Def.'s

Statement of Undisputed Material Facts, ECF No. 50 ¶ 76.)   In the paragraphs to which Berkley objects, Williams asserts that, after he was indicted for sales tax fraud in Shelby County, he consulted with an attorney, Arthur E. Horne, III, who "quoted [him] a flat fee of $15,000" to represent Williams in his criminal case. (See ECF No. 50-1 ¶ 9; ECF No. 50 ¶ 76.) Williams asserts that he afterward consulted with Berkley, and that Berkley advised Williams that he would charge "much less than Mr. Horne" to represent Williams in his criminal case. (See ECF No. 50-1 ¶ 10; ECF No. 50 ¶ 76.)

Berkley argues that the statements contained in the paragraphs to which he objects are hearsay, are irrelevant, lack foundation, and are conclusory. (See ECF No. 56-5.) Williams has responded. (See ECF No. 58 at 1-2.) Federal Rule of Civil Procedure 56(c)(2) provides that "[a] party may object that the material cited to support or dispute a fact cannot be presented in a form that would be admissible in evidence." The proponent of the evidence bears the burden of showing that the material is admissible or explaining the admissible form that is anticipated. Fed. R. Civ. P. 56(c)(2), 2010 Advisory Committee's Notes; see also, e.g., CBR Funding, LLC v. Jones, No. 13-cv-1280, 2014 WL 11456080, at *4 (W.D. Tenn. Nov. 4, 2014).

The parties dispute whether Williams's statement in his declaration that Horne "quoted [him] a flat fee of $15,000"

contains inadmissible hearsay. (Compare ECF No. 56-5 ¶ 1, with ECF No. 58 at 1-2.) It appears to. Horne's fee quote is an out-of-court statement and Williams relies on it, at least in part, for the truth of the matter asserted, i.e., that Horne would have charged a $15,000 flat fee to represent Williams in his criminal case. (See ECF No. 58 (asserting that Horne's fee quote is relevant to "the reasonableness of the fees" Berkley charged Williams because it would show that "Plaintiff is attempting to collect from Williams [] nearly six times more than the fee quoted by Mr. Horne").) However, the Court need not rule on Berkley's objections. The Court's determination of the parties' cross-motions for summary judgment relies on other portions of the record. See, e.g., Wilson v. Stein Mart, Inc., No. 3:15-cv-01271, 2016 WL 4680008, at *2 (M.D. Tenn. Sept. 7, 2016) (declining to resolve evidentiary objections at summary judgment where other facts in the record "provide[d] ample undisputed facts to dispose of th[e] case as a matter of law"). The Court will not consider the materials to which Berkley objects.

### 2. Breach of Contract

Williams moves for summary judgment on Berkley's breach of contract claim. (ECF No. 49-1 at 7-13.) Williams argues that: (1) there was no meeting of the minds between Berkley and Williams; (2) the terms of the contract between Berkley and

Williams are too indefinite to be enforced; and (3) the terms of the contract are not just and reasonable.  (Id.)

In Tennessee, "an attorney is entitled to compensation in the amount agreed upon by contract, provided that the contract is fair at its inception and entered into in good faith." Alexander v. Inman, 974 S.W.2d 689, 694 (Tenn. 1998) (citing Peoples Nat'l Bank of Wash. v. King, 697 S.W.2d 344, 346 (Tenn. 1985)).  "The relationship of attorney and client is 'extremely delicate and fiduciary,'" and the "level of good faith" required of attorneys when contracting with clients "is significantly higher than that required in other business transactions where the parties are dealing at arm's length."  Id. at 693-94 (quoting Cooper & Keys v. Bell, 153 S.W 844, 846 (Tenn. 1913)).

"Attorneys in Tennessee are [] encouraged, but not required, to enter into written employment contracts with their clients. They are required, however, to see to it that their clients understand how the fee will be calculated and billed whether the contract is in writing or not."  Alexander v. Inman, 903 S.W.2d 686, 694 (Tenn. Ct. App. 1995) (citing Cooper & Keys, 153 S.W. at 846, and In re Estate of Davis, 719 S.W.2d 526, 528 (Tenn. Ct. App. 1986)); see also Tenn. Sup. Ct. R. 8, R. Prof'l Conduct 1.5(b) ("The scope of the representation and the basis or rate of the fee and expenses for which the client will be responsible shall be communicated to the client, preferably in writing,

11

before or within a reasonable time after commencing the representation . . . .").  An attorney seeking to enforce a contract for attorney's fees must show that: (1) the client fully understood the contract's meaning and effect; (2) the attorney and client shared the same understanding of the contract; and (3) the terms of the contract are just and reasonable. Alexander, 974 S.W.2d at 694 (citing Cooper & Keys, 153 S.W. at 846).

Williams argues that, because Berkley did not communicate the specific "market rate" he would charge until the end of his representation of Williams, there was no meeting of the minds between Berkley and Williams and the terms of the contract between Berkley and Williams are too indefinite to be enforced. (ECF No. 49-1 at 7-13.)  Those arguments address the first two Alexander factors governing the enforceability of attorney-client contracts -- whether the client fully understood the contract and whether the attorney and client shared the same understanding of it.  See Alexander, 974 S.W.2d at 694; see also Silva v. Buckley, No. M2002-00045, 2003 WL 23099681, at *7 (Tenn. Ct. App. Dec. 31, 2003) (Cottrell, J., dissenting) ("The requirement that the attorney and the client share the same understanding of the fee agreement incorporates general contract law regarding meeting of the minds, but places it in the context

12

of the fiduciary obligation of the attorney, whose duty it is to ensure that such a mutual understanding exists.").

Williams's arguments comport with general principles of contract law. In Tennessee, "a valid and enforceable contract must . . . result from a meeting of the minds and must be sufficiently definite to be enforced." Mathis v. Mathis, No. M2008-01357, 2009 WL 3817289, at *4 (Tenn. Ct. App. Nov. 13, 2009) (quotation marks and citation omitted). "All the essential terms of a contract must be finally and definitely settled." United Am. Bank of Memphis v. Walker, Tipton Equity No. 3, 1986 WL 11250, at *2 (Tenn. Ct. App. Oct. 10, 1986). "[C]ontract price must be 'sufficiently definite to be enforced.'" Universal Props., Inc. v. Regions Bank, No. 3:11-cv-538, 2012 WL 4360770, at *2 (E.D. Tenn. Sept. 21, 2012) (quoting Klosterman Dev. Corp. v. Outlaw Aircraft Sales, Inc., 102 S.W.3d 621, 635 (Tenn. Ct. App. 2002)).

Addressing attorney-client contracts specifically, the Tennessee Supreme Court has stated that "an attorney should reach a clear agreement about fees with the client and should explain the reasons for preferring one arrangement over another." Alexander, 974 S.W.2d at 695. However, the Tennessee Supreme Court has also stated that, "[i]n general, an agreement which utilizes broad terms and does not fix an exact fee is still acceptable." Id. In Alexander, the Tennessee Supreme Court

13

found an attorney-client contract enforceable where the parties agreed the attorneys would charge a "reasonable fee, based upon expressed factors." Id. In Waller, Lansden, Dortch & Davis v. Haney, 851 S.W.2d 131 (Tenn. 1992), the Tennessee Supreme Court enforced a promissory note created pursuant to an attorney-client retainer agreement in which the parties agreed the attorneys would charge "a reasonable fee based on the amount involved, the time expended, the novelty of the transaction, and the deadlines imposed upon counsel." 851 S.W.2d at 132.

Berkley asserts that he and Williams verbally agreed that Berkley would charge the "market rate" for his services. (ECF No. 56-2 ¶ 23.) Although that arrangement was broad and inexact, the Court cannot conclude as a matter of law that Berkley and Williams never formed a contract or that their contract was so indefinite that it could not be enforced. In Tennessee, broad and inexact fee arrangements in attorney-client contracts are "still acceptable." Alexander, 974 S.W.2d at 695.

Williams argues that the terms of the contract between Berkley and Williams are not just and reasonable. (ECF No. 49-1 at 11, 14-19.) That argument addresses the third Alexander factor governing the enforceability of attorney-client contracts. See Alexander, 974 S.W.2d at 694 ("Under the third and last criterion for an attorney seeking to enforce a contract for fees, the terms of the contract must be just and

14

reasonable.").  In determining whether the terms of an attorney-client contract are just and reasonable, a court must consider not only the stated terms of the agreement, but "must also determine whether the fee ultimately charged was a reasonable fee[.]"  Id. at 695.

"Tennessee has no fixed mathematical rule for determining what a reasonable fee is."  Wright ex rel. Wright v. Wright, 337 S.W.3d 166, 176 (Tenn. 2011) (quotation marks and citation omitted).  "[T]he reasonableness of the fee must depend upon the particular circumstances of the individual case."  Id. (quotation marks and citation omitted).   "In determining whether an attorney's fee is reasonable, a trial court must consider the non-exclusive factors enumerated in Rule 1.5(a) of the Tennessee Rules of Professional Conduct":

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;
>
> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent;

(9) prior advertisements or statements by the lawyer with respect to the fees the lawyer charges; and

(10) whether the fee agreement is in writing.

Coleman v. Coleman, No. W2012-02183, 2013 WL 5308013, at *13-14 (Tenn. Ct. App. Sept. 19, 2013) (citing Tenn. Sup. Ct. R. 8, R. Prof'l Conduct 1.5(a), and Connors v. Connors, 594 S.W.2d 672, 676 (Tenn. 1980)); see also In re Estate of Thompson, No. M2011-00411, 2012 WL 912859, at *10 (Tenn. Ct. App. Mar. 14, 2012) (same).

After agreeing to charge the "market rate" at the outset of his representation of Williams in the appeal of the Chancery Court suit, Berkley ultimately charged Williams a rate of $500 an hour for the work performed on the civil and criminal matters. (ECF No. 56-2 ¶¶ 58-59, 67.) Under the factors laid out above, that fee was not reasonable.

First, Berkley's representation of Williams did not require an unusual commitment of time and labor and did not involve questions that were particularly novel or difficult. Berkley charged Williams for 89 hours of work on the four civil matters and 132 hours of work on the criminal matter performed between January 2012 and February 2014. (See ECF No. 56-4 at 8, 13.) Berkley's representation of Williams included work on an appeal

in a civil fraud case; an eviction action; a criminal action for sales tax fraud; and, briefly, a bankruptcy matter. (ECF No. 56-2 ¶¶ 13, 27, 32, 41, 50.) Berkley's work for Williams involved questions about, <u>inter alia</u>, the admissibility of business records, mitigation of damages, and scienter. (<u>Id.</u> ¶ 75.)

<u>Second</u>, Berkley was not precluded from other employment while representing Williams. During the time Berkley represented Williams, Berkley's practice consisted of "sixty-five (65) percent to seventy (70) percent personal injury cases." (<u>Id.</u> ¶ 12.)

<u>Third</u>, the $500 hourly rate Berkley charged Williams was significantly higher than the customary fee charged in this area at the time Berkley represented Williams. The parties describe Berkley's work for Williams as "complex commercial" or "commercial" litigation. (ECF No. 49-1 at 17; ECF No. 56-1 at 3.) Berkley applied the same hourly rate for the civil matters and the criminal matter. (ECF No. 56-2 ¶ 54.) Williams cites several recent cases in which courts in this locality have decided that rates between $200 an hour and $350 an hour were reasonable in commercial litigation matters. (<u>See</u> ECF No. 49-1 at 12.) Other case law is in accord. <u>See</u> <u>All Secure Guard & Patrol Servs., Inc. v. Fed. Home Loan Mortg. Corp.</u>, No. 14-cv-2575, 2015 WL 7302789, at *5-6 (W.D. Tenn. Nov. 18, 2015)

(awarding reasonable attorney's fees in a commercial litigation case at rates of $300 an hour and $335 an hour that were "in accordance with the prevailing market rates of lawyers of comparable skill and experience"); Notredan, LLC v. Old Republic Exch. Facilitator Co., No. 11-cv-2987, 2012 WL 3049941, at *3 (W.D. Tenn. July 25, 2012) (awarding reasonable attorney's fees in a commercial litigation case at rates of $225 an hour to $275 an hour and finding that "[c]ounsel has shown that [those rates] are entirely consistent with the prevailing market rates for similar legal services in this District").

Berkley states that he calculated a "market rate" of $500 an hour based on the attorney's fees awarded by this Court to senior partners in an election law case.  (ECF No. 53 ¶ 6 (citing Liberty Legal Found. v. Democratic Nat'l Comm., No. 12-cv-2143, 2012 WL 6026856 (W.D. Tenn. Dec. 4, 2012)).)  Berkley also cites a 2013 Tennessee Court of Appeals opinion in which the court noted that "a few Shelby County attorneys charge as much as $500 per hour for certain sophisticated business matters."  Coleman, 2013 WL 5308013, at *15.  That a few attorneys in this area charged "as much as $500 per hour" for sophisticated work at the time Berkley represented Williams does not demonstrate that $500 per hour is the customary fee or the "market rate" for commercial litigation matters.  Based on the multiple cases cited, the customary fee at that time appears to have been significantly

lower.   Berkley offers no experts or case law suggesting otherwise.

Fourth, the amount at issue in Berkley's representation of Williams was significant but the results obtained were not particularly good.   The amount at issue in the appeal of the Chancery Court suit was $6,000,000.   (ECF No. 56-2 ¶ 22.)   That is a significant amount, but the appeal was unsuccessful, as were Berkley's defense of Williams in the FED action and his filing of the writ of certiorari and supersedeas.   (Id. ¶¶ 30, 45, 49.)   The results of Berkley's work on Alexis Williams's bankruptcy matter are unclear from the record.   (Id. ¶ 42.) Berkley did obtain one somewhat favorable result in Williams's criminal case, which resulted in a hung jury before Berkley withdrew from the representation.   (Id. ¶¶ 55-56.)

Fifth, there is no indication that Williams or the circumstances imposed any unusual time limitations on Berkley.

Sixth, Berkley represented Williams from 2008 to 2014.   (Id. ¶ 11.)

Seventh, Berkley's experience, reputation, and ability are not exceptional in the areas of law in which he represented Williams.   Berkley is an experienced trial lawyer, but he practices primarily personal injury law.   (Id. ¶ 12; ECF No. 58 ¶ 86.)   Berkley previously practiced insurance law, admiralty law, civil rights law, and did plaintiffs' work.   (ECF No. 56-2

¶¶ 5-6.)  Berkley represented Williams in a civil fraud case, an eviction action, and a criminal fraud case, and assisted Williams's daughter in a bankruptcy matter.  He does not appear to have significant prior experience in those areas of law.  As he concedes, Berkley is not "a real criminal lawyer."  (Id. ¶ 51.)  Berkley cites his past work as a CLE instructor teaching, inter alia, torts, ethics, and trial strategy classes, but does not explain how that experience is relevant to the Court's determination.  (ECF No. 56-1 at 4; ECF No. 58 ¶ 88.)

Eighth, Berkley's fee arrangement with Williams, that he would charge an unspecified "market rate," is not a fixed rate given that the precise hourly rate is not stated.

Ninth, Berkley's fees in his prior representations of Williams differ substantially from the fees he ultimately charged Williams for the civil and criminal matters at issue here.  In Berkley's initial representation of Williams in the Chancery Court suit, Berkley charged a total of $16,000 in flat fees. (ECF No. 56-2 ¶¶ 13-14, 17.)  Here, Berkley seeks almost $150,000 in hourly fees.  (ECF No. 35 ¶ 9.)

Tenth, Berkley's fee arrangement with Williams was not in writing.  (ECF No. 56-2 ¶¶ 25, 74.)

Considering all of these factors, the $500 hourly rate Berkley charged Williams was not reasonable.  That rate was significantly higher than the customary fee charged in the area

20

at the time Berkley represented Williams.  The record does not
establish that the complexity of the representation, the results
obtained, or Berkley's experience, reputation, and ability
justify the upward departure.  "[A]n attorney seeking to enforce
a contract for attorney's fees must show . . . the terms of the
contract are just and reasonable."  Alexander, 974 S.W.2d at
694.  On the evidence presented, Berkley cannot make that showing
at trial.  The terms of the contract between Berkley and Williams
were not just and reasonable.  The contract is unenforceable.
As to Berkley's breach of contract claim, Williams's Motion for
Summary Judgment is GRANTED.

### 3.   Quantum Meruit

Williams moves for summary judgment on Berkley's quantum
meruit claim.  (ECF No. 49-1 at 13-20.)  Williams argues that:
(1) Berkley cannot recover quantum meruit damages because the
fee he charged Williams was "clearly excessive"; and (2) Berkley
cannot recover quantum meruit damages from Williams for services
Berkley performed for Williams's family members or Williams's
business.  (Id.)

In Tennessee, "[a] party who had a contract at one time may
pursue a quantum meruit recovery if the contract is no longer
enforceable."  Castelli v. Lien, 910 S.W.2d 420, 428 (Tenn. Ct.
App. 1995).  "A quantum meruit action is an equitable substitute
for a contract claim pursuant to which a party may recover the

reasonable value of goods and services provided to another if the following circumstances are shown":

> (1) there is no existing, enforceable contract between the parties covering the same subject matter;

> (2) the party seeking recovery proves that it provided valuable goods or services;

> (3) the party to be charged received the goods or services;

> (4) the circumstances indicate that the parties to the transaction should have reasonably understood that the person providing the goods or services expected to be compensated; and

> (5) the circumstances demonstrate that it would be unjust for a party to retain the goods or services without payment.

Swafford v. Harris, 967 S.W.2d 319, 324 (Tenn. 1998) (citing Castelli, 910 S.W.2d at 427, and Pascall's, Inc. v. Dozier, 407 S.W.2d 150, 154 (Tenn. 1966)).

Williams argues that Berkley cannot recover quantum meruit damages because the $500 hourly rate he charged Williams was "clearly excessive." (ECF No. 49-1 at 14-19.) In White v. McBride, 937 S.W.2d 796 (Tenn. 1996), the Tennessee Supreme Court held that an attorney was barred from recovering quantum meruit damages where his contingency fee arrangement with his client in a probate case was "clearly excessive." 937 S.W.2d at 801-03. In White, the parties had agreed that the attorney would earn a one-third contingency fee out of what was likely to be -- and ultimately was -- a sizeable recovery for the client from his

estranged wife's large estate.  Id. at 797-99.  The court found
that the case was not particularly complicated, the lawyer was
not a probate specialist, and the results obtained were not
particularly good.  Id. at 801.  It found that the fee charged
was not reasonable and the contract was unenforceable.  Id. at
800-01.  The court also disallowed any recovery for the attorney
in quantum meruit because the one-third contingency fee was
"clearly excessive."  Id. at 802-03.  The court stated:

> We are of the opinion, however, that an attorney who
> enters into a fee contract, or attempts to collect a
> fee, that is clearly excessive . . . should not be
> permitted to take advantage of the [] rule [allowing
> attorneys to recover quantum meruit damages]. . . . To
> permit an attorney to fall back on the theory of
> quantum meruit when he unsuccessfully fails to collect
> a clearly excessive fee does absolutely nothing to
> promote ethical behavior.  On the contrary, this
> interpretation would encourage attorneys to enter
> exorbitant fee contracts, secure that the safety net
> of quantum meruit is there in case of a subsequent
> fall.

Id. at 803 (emphasis omitted).

Williams argues that the White rule -- i.e., that an
attorney may not recover quantum meruit damages when the fee he
charged was clearly excessive -- bars Berkley's quantum meruit
claim.  (ECF No. 49-1 at 14-19.)  Berkley responds that the White
rule applies only when an attorney attempts to charge a clearly
excessive contingency fee.  (ECF No. 56-1 at 1-2 (arguing that
"the holding in White . . . was limited to contingency fee
arrangements").)  Berkley relies on a footnote in a later

Tennessee Supreme Court case, _Alexander_, in which the court found the _White_ rule "inapplicable" to the case at hand because "the fee [at issue was] not contingent."  974 S.W.2d at 693 n.6.

If the _White_ rule were to apply to Berkley's case, it could bar Berkley's quantum meruit claim.  The Court must first determine whether the _White_ rule applies beyond the contingency fee context.  If it does not, it does not apply to this case, where there was an hourly fee arrangement.  The Court must "apply state law in accordance with the controlling decisions of the state supreme court."  _Allstate Ins. Co. v. Thrifty Rent-A-Car Sys., Inc._, 249 F.3d 450, 454 (6th Cir. 2001).  "If the state supreme court has not yet addressed the issue presented, [the federal court] must predict how the [state supreme] court would rule by looking to all the available data."  _Id._; _see also_ _Conlin v. Mortg. Elec. Registration Sys., Inc._, 714 F.3d 355, 358-59 (6th Cir. 2013) ("[W]e look to the final decisions of [the] state's highest court, and if there is no decision directly on point, then we must make an _Erie_ guess to determine how that court, if presented with the issue, would resolve it.") (citing _Erie_, 304 U.S. at 78).

Berkley argues that the Tennessee Supreme Court's footnote in _Alexander_ finding the _White_ rule "inapplicable" to a non-contingency fee case is a controlling statement of law that prohibits the _White_ rule from applying in this case.  (ECF No.

24

56-1 at 1-2.)  Williams argues that the footnote is dicta that does not bind the Court in deciding whether to apply the White rule.  (ECF No. 57 at 3-4.)  This is a close issue, but Williams is correct.

In Alexander, the Tennessee Supreme Court held that an attorney-client contract governing several attorneys' representation of a client in a divorce action was enforceable. 974 S.W.2d at 698.  The contract at issue provided that the client would pay the attorneys a "reasonable amount" to represent her in the divorce action, "based upon expressed factors."  Id. at 690-91, 695.  The contract set a minimum fee of $10,000 or the total hourly work performed by the attorneys, and a maximum fee of 15% of the total amount of the marital estate awarded to the client at trial.  Id. at 690-91.  After obtaining a $3.3 million recovery from the marital estate for the client, the attorneys charged her the maximum fee, i.e., 15% of the recovery obtained.  Id. at 691-92.  After the client declined to pay the fee charged, the attorneys sued to recover the unpaid fee.  Id. at 692.

The Tennessee Supreme Court addressed two primary issues in Alexander.  First, it addressed whether the contract at issue was a contingency fee arrangement.  Id. at 693.  That was a significant question before the court because, in Tennessee, contingency fees are disfavored in domestic relations cases and

25

are subject to heightened scrutiny.  Id.  The court found that the contract at issue was not a contingency fee arrangement because "[p]ayment itself [was] certain" and "only the exact amount of payment [was] uncertain." Id. (emphasis omitted).  As part of the court's discussion of this question, it noted, in a footnote, that, "because we find that the fee is not contingent, the recent case White v. McBride, 937 S.W.2d at 803, is inapplicable to this case." Id. at 693 n.6.

After finding that the contract at issue was not a contingency fee arrangement, the court in Alexander addressed the second primary issue, whether the contract was enforceable. Id. at 693-97.  The court applied the Alexander factors discussed above for the enforceability of an attorney-client contract and found that the client fully understood the contract's meaning and effect; that the attorneys and client shared the same understanding of the contract; and that the terms of the contract were just and reasonable.  Id.  The court found the attorneys entitled to the "full amount requested." Id. at 698.

Williams argues that the court's statement in Alexander that the White rule was inapplicable to the case at hand was dicta. (ECF No. 57 at 3-4.)  The Sixth Circuit recently provided a framework for distinguishing an opinion's holding and dicta. See Wright v. Spaulding, 939 F.3d 695, 700-02 (6th Cir. 2019).

26

"For a court's conclusion about an issue to be part of its holding":

> (1) the decision of the issue must contribute to the judgment;

> (2) it must be clear that the court intended to rest the judgment . . . on its conclusion about the issue; and

> (3) it must be clear that the court considered the issue and consciously reached a conclusion about it.

Id. at 701-02.

In evaluating whether the Alexander court's statement about White is holding or dicta, the Court need consider only the first of the three elements of a holding -- whether "[t]he decision of the issue [] contribute[d] to the judgment." Id. at 701. A court's decision on an issue contributes to the judgment if it is "necessary" or "sufficient" to the judgment.[2] Id. (citing Michael C. Dorf, Dicta and Article III, 142 U. Pa. L. Rev. 1997, 2044 (1994), and Michael Abramowicz & Maxwell Stearns, Defining Dicta, 57 Stan. L. Rev. 953, 1027-29 (2005)). By contrast, "a conclusion that does nothing to determine the outcome is dictum and has no binding force." Id. (emphasis omitted).

---

[2] In Wright, the Sixth Circuit left open the question whether a third type of statement -- "conclusions that, while not affecting the judgment by themselves, are necessary to structure the court's path to those conclusions" -- could contribute to a court's judgment. 939 F.3d at 701 n.2. "[T]his is a hard question." Id. The Court will not attempt to resolve it here.

The court's footnote in Alexander stating that the White rule was inapplicable to the case at hand was neither necessary nor sufficient to the court's judgment that the contract at issue was enforceable.  The court's statement was not necessary to the judgment.  "A statement is a necessary proposition to a second statement if the court logically could not make the second statement while denying the first."  Abramowicz & Stearns, supra, at 967.  In Alexander, the court could have ruled that the contract was enforceable without determining that the White rule -- a rule that applies only to quantum meruit claims -- does not apply to non-contingency fee arrangements.

The court's statement was not sufficient to the judgment. "A statement is a sufficient proposition to a second statement if the court logically could not make the first statement while denying the second."  Id. at 968.  The court's conclusion in Alexander that the White rule would not apply to the contract at issue did not compel its ruling that the contract was enforceable.  The court could have answered that question either way and ruled that the contract was enforceable.  The court's statement in Alexander did not affect the outcome of the case. It is dictum.

Because there are no controlling statements by the Tennessee Supreme Court about whether the White rule applies to non-contingency fee arrangements, the Court must "predict how the

28

[state supreme] court would rule by looking to all the available data." <u>Allstate</u>, 249 F.3d at 454. "Available data" includes decisions of the Tennessee Supreme Court in analogous cases and relevant dicta, decisions of the Tennessee Court of Appeals, positions in restatements of law and treatises, law review articles, and "decisions from other jurisdictions." <u>ACME Roll Forming Co. v. Home Ins. Co.</u>, 31 F. App'x 866, 870 n.2 (6th Cir. 2002) (citing <u>Bailey v. V&O Press Co.</u>, 770 F.2d 601, 604 (6th Cir. 1985)). A federal court may disagree with state appellate court decisions if it is persuaded that the highest state court would disagree. <u>See</u> <u>West v. Am. Tel. & Tel. Co.</u>, 311 U.S. 223, 237 (1940).

The Tennessee Supreme Court has discussed the <u>White</u> rule in three cases. In <u>Alexander</u>, as discussed above, the court stated in dicta that, "because we find that the fee [at issue] is not contingent, the recent case <u>White v. McBride</u>, 937 S.W.2d at 803, is inapplicable to this case." 974 S.W.2d at 693 n.6. In <u>Swafford</u>, the court applied the <u>White</u> rule in holding that a contingency fee arrangement between a physician expert witness and a client was void as against public policy and that the physician was disallowed from recovering quantum meruit damages. 967 S.W.2d at 324-25. In <u>Wright</u>, the court briefly discussed the <u>White</u> rule as part of its determination that a contingency fee arrangement between an attorney and a minor's parent, acting

29

on behalf of the minor, was unenforceable, and that the court should award "reasonable fees" to the attorney.   337 S.W.3d at 185 n.30.   The Tennessee Supreme Court has not applied the <u>White</u> rule outside the contingency fee context.

The Tennessee Court of Appeals has applied the <u>White</u> rule beyond the contingency fee context in three cases.   <u>See</u> <u>Thompson</u>, 2012 WL 912859, at *5-6, 12-16 (considering whether an attorney's fee based on a percentage of the gross probate estate at issue was "clearly excessive" under <u>White</u>); <u>Hosier v. Crye-Leike Commercial, Inc.</u>, No. M2000-01182, 2001 WL 799740, at *7 (Tenn. Ct. App. July 17, 2001) (same, for an hourly rate fee arrangement); <u>McDonnell Dyer, P.L.C. v. Select-O-Hits, Inc.</u>, No. W2000-00044, 2001 WL 400386, at *5-7 (Tenn. Ct. App. Apr. 20, 2001) (same, for a flat fee arrangement).   None of the majority opinions in those cases discussed whether the <u>White</u> rule is limited to the contingency fee context or evaluated the Tennessee Supreme Court's statement in dicta in <u>Alexander</u> about the <u>White</u> rule.[3]

The Court must predict how the Tennessee Supreme Court would decide the question whether the <u>White</u> rule applies outside the

---

[3] In <u>Thompson</u>, a concurring judge argued that the majority's reliance on the <u>White</u> rule was mistaken because "<u>White</u>'s application has clearly been limited to cases involving contingent fee arrangements."   2012 WL 912859, at *16-17 (Highers, J., concurring) (citing <u>Alexander</u>, 974 S.W.2d at 693 n.6).

contingency fee context.  *See* *Allstate*, 249 F.3d at 454.  The Tennessee Supreme Court's statement in *Alexander* that the *White* rule is "inapplicable" to non-contingency fee arrangement is the best available predictor.  It is a statement in dicta from the state high court that speaks directly to the question at issue.  "[A] carefully considered statement by the state court, even though technically dictum, certainly is persuasive evidence of how the state court might decide the point."  19 Charles Alan Wright et al., *Federal Practice and Procedure* § 4507 (3d ed. 2019); *see also* *Kraemer v. Luttrell*, 189 F. App'x 361, 365 (6th Cir. 2006) ("We 'may consider applicable dicta of the state's highest court' in our effort to ascertain how that court would decide the issue.") (quoting *Pack v. Damon Corp.*, 434 F.3d 810, 818 (6th Cir. 2006)); *ACME Roll Forming Co.*, 31 F. App'x at 870 n.2 ("The decisional law of the state's highest court and relevant dicta in related cases as determined by that court are accorded the greatest weight.").

Although several decisions of the Tennessee Court of Appeals have applied the *White* rule beyond the contingency fee context, the Court is not obligated to "heed the decisions of the intermediate appellate state courts" where it "is persuaded that the highest court of the state would not so decide."  *Pack*, 434 F.3d at 818 (citing *Comm'r v. Estate of Bosch*, 387 U.S. 456, 465 (1967)).  The Court is persuaded that the Tennessee Supreme Court

would decide that the White rule does not apply outside the contingency fee context.

Berkley's fee arrangement with Williams was based on an hourly "market rate." (ECF No. 56-2 ¶¶ 23-24.) The White rule is inapplicable to this case. The Court need not consider whether, under White, the $500 hourly rate Berkley charged was "clearly excessive." There is a material dispute of fact about whether Berkley is entitled to recover in quantum meruit the reasonable value of the services he provided to Williams, and if so, what the reasonable value of those services is.

Williams argues that Berkley cannot recover quantum meruit damages from Williams for services he performed for Williams's family members or Williams's business. (ECF No. 49-1 at 19-20.) Williams asserts, and Berkley does not dispute, that some of the services for which Berkley seeks to recover from Williams were performed for several of Williams's family members, such as Alexis Williams, whom Berkley assisted in her bankruptcy proceeding. (ECF No. 56-2 ¶¶ 41, 71-73.)

A necessary element of a quantum meruit action is that "[t]he party to be charged received the goods or services." Swafford, 967 S.W.2d at 324. Berkley cannot recover quantum meruit damages from Williams for services Williams did not receive. It is clear from the record, however, that much of the work for which Berkley seeks to recover was performed for

Williams, such as Berkley's work on Williams's criminal case. (See ECF No. 56-2 ¶¶ 50-56.)  There is an issue for trial about how much of the work Berkley performed was done for Williams and how much was done for others.

On Berkley's quantum meruit claim, there are material disputes of fact about, inter alia, the scope of the services Berkley performed for Williams and the reasonable value of those services.  Summary judgment on this claim is not appropriate.  Williams's Motion for Summary Judgment on Berkley's quantum meruit claim is DENIED.

**B.  Berkley's Motion for Summary Judgment**

Berkley moves for summary judgment.  (ECF No. 51.)  It is not clear whether he moves for summary judgment on his breach of contract claim, his quantum meruit claim, both, or neither.  In his Motion for Summary Judgment, Berkley asks the Court to decide as a matter of law that: (1) a contract implied in fact is enforceable even if it uses broad and inexact terms; (2) estimated and reconstructed time records for attorney's fees are enforceable; (3) the FED action, writ of certiorari and supersedeas representation, and bankruptcy work that Berkley performed "constituted the enforcement of the Chancery Court judgment"; and (4) Williams's family members were "in privity with Williams regarding Regions [Bank's] enforcement of the Chancery Court judgment."  (ECF No. 51-1 at 2-4.)

Summary judgment is designed to narrow the parties' claims and defenses.   "A party may move for summary judgment, identifying each claim or defense —- or the part of each claim or defense —- on which summary judgment is sought.   The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."   Fed. R. Civ. P. 56(a).   Summary judgment is not a vehicle for resolving isolated questions of fact or law.   See, e.g., Alvion Props., Inc. v. Weber, No. 3:08-cv-0866, 2012 WL 4903369, at *1 (M.D. Tenn. Oct. 16, 2012) (recommending denial of motion for partial summary judgment that "d[id] not seek partial summary judgment regarding any claim for relief or defense" and instead requested a "ruling that two particular factual allegations contained in the amended complaint are untrue"), adopted by 2012 WL 5830591 (M.D. Tenn. Nov. 16, 2012); Samuels v. Arnold, No. 11-cv-0201, 2012 WL 6020089, at *1-2 (W.D. La. Nov. 19, 2012) (recommending denial of motion for partial summary judgment that constituted "[p]iecemeal, fact-by-fact motion practice" and was not "capable of resolving [a] significant claim or defense that will make the trial proceed more efficiently"), adopted by 2012 WL 6020084 (W.D. La. Dec. 3, 2012).

The only claim on which Berkley moves for summary judgment is what he describes as his claim for breach of a "contract

implied in fact." (ECF No. 51-1 at 2-3.) A contract implied in fact is distinct from an express oral contract, "with the primary difference between them being the manner in which the parties manifest their assent." Thompson v. Hensley, 136 S.W.3d 925, 930 (Tenn. Ct. App. 2003). "In an express contract, the parties assent to the terms of the contract by means of words, writings, or some other mode of expression." River Park Hosp., Inc. v. BlueCross BlueShield of Tenn., Inc., 173 S.W.3d 43, 57 (Tenn. Ct. App. 2002). "In a contract implied in fact, the conduct of the parties and the surrounding circumstances show mutual assent to the terms of the contract." Id.

Berkley does not have a claim for breach of a "contract implied in fact." His Amended Complaint asserts a breach of contract claim and a quantum meruit claim. (ECF No. 35 ¶¶ 7-8.) Berkley asserts that his contract with Williams -- including their agreement that Williams would pay Berkley the "market rate" -- was oral and express. (See ECF No. 56-2 ¶ 2 n.2 (alleging that "Williams agreed that the market rate was fine an[d] that he would get it paid").) The Court cannot consider a claim to relief asserted for the first time in a summary judgment motion. See Tucker v. Union of Needletrades, Indus. and Textile Emps., 407 F.3d 784, 788 (6th Cir. 2005).

Berkley's other arguments in his Motion for Summary Judgment are about discrete questions of fact or law. He asks the Court

to determine that: (1) estimated and reconstructed time records for attorney's fees are enforceable; (2) the FED action, writ of certiorari and supersedeas representation, and bankruptcy work that Berkley performed "constituted the enforcement of the Chancery Court judgment"; and (3) Williams's family members were "in privity with Williams regarding Regions [Bank's] enforcement of the Chancery Court judgment." (ECF No. 51-1 at 3-4.) Berkley does not explain the significance of these issues. He does not explain how addressing these issues would allow the Court to resolve any claim or defense in the case. They are not appropriate for summary judgment. Berkley's Motion for Summary Judgment is DENIED.

**V.   Conclusion**

For the foregoing reasons, Williams's Motion for Summary Judgment is GRANTED IN PART and DENIED IN PART. Berkley's Motion for Summary Judgment is DENIED.


So ordered this 16th day of April, 2020.


                              /s/ *Samuel H. Mays, Jr.*
                              Samuel H. Mays, Jr.
                              UNITED STATES DISTRICT JUDGE