IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| DRAYTON D. BERKLEY, d/b/a BERKLEY LAW FIRM PLLC, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) No. 2:17-cv-02909-SHM-dkv |
| JOSEPH C. WILLIAMS, | ) ) ) |
| Defendant. | ) ) ) ) |

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

Plaintiff Drayton D. Berkley, d/b/a Berkley Law Firm PLLC, ("Berkley") brings this quantum meruit action against Defendant Joseph Williams ("Williams"). Berkley seeks legal fees incurred during Berkley's representation of Williams in three civil actions and one criminal action.

On March 22, 2021, the Court held a bench trial on Berkley's claim. (D.E. No. 92.) On May 5, 2021, Williams filed his proposed findings of fact and conclusions of law. (D.E. No. 95.) On May 5, 2021, Berkley filed his proposed findings of fact and conclusions of law. (D.E. No. 96.) On May 10, 2021, Berkley responded to Williams' proposed findings of fact and conclusions of law. (D.E. No. 97.) On May 17, 2021, Williams responded to Berkley's proposed findings of fact and conclusions of law. (D.E. No. 98.) Pursuant to Federal Rule of Civil

Procedure 52, the Court makes the following findings of fact and states the following conclusions of law.

## I.    Background

In the Joint Pretrial Order, (D.E. No. 91), the parties agree to the following summary of the case:

> This case is a quantum meruit action brought pursuant to Tennessee common law in which Plaintiff Drayton D. Berkley alleges that he provided valuable legal services to Defendant Joseph Williams and Defendant has not paid for those services. At issue are Plaintiff's alleged representation of Defendant in five actions: (1) <u>Regions Bank. N.A. v. Williams et al.</u>, Tennessee Court of Appeals Docket No. W2013-00408-COA-R3-CV, ("Regions Bank appeal") (2) <u>Regions Bank, N.A. v. Williams et al.</u>, Shelby County General Sessions Court, Docket No. 1604413 ("FED action"), (3) <u>Williams v. Regions Bank</u>, Shelby County Circuit Court Docket No. CT-002721-13 ("Writ of Certiorari action"), (4) <u>In re Alexis Williams</u>, U. S. Bankruptcy Court Docket No. 13-23275 ("Alexis Williams bankruptcy action"), and (5) <u>State v. Williams</u>, Shelby County Criminal Court ("Criminal action"). Plaintiff sent invoices to Defendant charging him $500.00 per hour to represent Defendant in these cases. Defendant provided Plaintiff with a Rolex watch and a 2005 BMW 330 CI, which he believed was full payment for any services rendered to him. Plaintiff does not agree that the Rolex watch and BMW vehicle constituted full payment for legal services rendered.

(D.E. No. 91, 1-2.)

## II.   Jurisdiction and Choice of Law

The Court has diversity jurisdiction under 28 U.S.C. § 1332. Berkley is a resident citizen of Tennessee. (D.E. No. 35 ¶ 1.) Williams is a resident citizen of Texas. (<u>Id.</u> ¶ 2.) Berkley alleges that the amount in controversy exceeds $75,000. (<u>Id.</u> at

1 n.1.) "[T]he sum claimed by the plaintiff controls if the claim is apparently made in good faith." St. Paul Mercury Indem. Co. v. Red Cab Co., 303 U.S. 283, 288 (1938); see also Charvat v. NMP, LLC, 656 F.3d 440, 447 (6th Cir. 2011).

State substantive law applies to state law claims in federal court. See Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78-80 (1938). When there is no dispute that a certain state's substantive law applies, the court need not conduct a choice-of-law analysis sua sponte. See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998). Throughout the case, the parties have assumed that Tennessee substantive law governs Berkley's claim. (See D.E. No. 49-1 at 7; D.E. No. 51-1 at 2-4.) The Court will apply Tennessee substantive law.

## III. Findings of Fact

### A. Stipulated Facts

In the Joint Pretrial Order, the parties have agreed that the following facts are not in dispute:

    1. There is no existing enforceable contract between Berkley and Williams.

    2. Berkley secured a hung jury for Williams in the Criminal action.

(D.E. No. 91, 4.)

### B. Facts Established at Trial

Berkley graduated from the University of Mississippi with a bachelor's degree in engineering in August 1989.  (D.E. No. 94, 25:17-25:19.)   He received his juris doctorate from the University of Mississippi in December 1995.  (Id. at 25:19-25:20.)  Berkley began his legal career at Bryan Nelson Randolph & Weathers in January 1996.  (Id. at 25:24-26:1.)  He practiced insurance defense and admiralty.  (Id. at 26:1-26:2.)  He worked there for six years, until 2002.  (Id. at 26:7-26:8.)

Berkley next worked at The Cochran Firm in Memphis, Tennessee, starting in June 2002.  (Id. at 26:9-26:10.)   He worked primarily on tort cases, and he also worked on § 1983 excessive force cases.  (Id. at 26:10-26:12.) Berkley worked at The Cochran Firm until January 2005.  (Id. at 267-26:18.)

Berkley formed his own law practice in 2005.  (Id. at 18-26:19.)  For the first three to four years, he worked on cases that he brought from The Cochran Firm.  (Id. at 26:19-26:21.) He primarily handled personal injury cases, and he also handled divorce cases.  (Id. at 26:21-26:24.)

Berkley first met Williams in 2003.  (Id. at 26:4-27:1.) Berkley began representing Williams in 2008 when Williams was seeking new representation for some of his legal matters.  (See id. at 27:1-27:4.)

Berkley represented Williams and People's Choice Auto Sales, LLC ("People's Choice") in a civil fraudulent lending

case in federal court (the "Austin case") and in a fraud case in the Tennessee Chancery Court (the "Regions Bank case"). (See id. at 27:6-27:22; id. at 62:11-62:14.) People's Choice was a car dealership. (Id. at 63:4-63:6.) In the Regions Bank case, Berkley also represented Kimberlee Williams, Alexis Williams, and Chazz Bartley. (See Exhibit 7.) Kimberlee Williams is Williams' wife, and Alexis Williams and Chazz Bartley are his daughters. (D.E. No. 94, 144:15-144:16.) Berkley's representation in the two cases began in 2008. (See id. at 27:5-27:12.) Berkley charged Williams $4,000 for summary judgment motions in both cases. (Id. at 28:10-28:11; id. at 63:7-63:11.) In 2011, the Chancery Court denied summary judgment in the Regions Bank case and the case went to trial. (Id. at 63:17-63:19; see id. at 32:22-32:23.) The record does not show how the Austin case concluded.

Berkley charged a flat fee of $12,500 to represent Williams, People's Choice, and Williams' family members at trial in the Regions Bank case. (Id. at 33:4-33:5.) That fee is Berkley's standard flat fee for a trial. (Id. at 33:5-33:13.) The non-jury trial was held from August 27, 2012, through August 29, 2012. (Exhibit 7.) The Chancery Court entered a $6,000,000 judgment against Williams and People's Choice. (See D.E. No. 94, at 33:23-34:5.) Kimberlee Williams, Alexis Williams, and Chazz Bartley were divested of their ownership in the Williams

family house. (See Exhibit 7.) The judgment was admitted as Exhibit 7. (Id. at 121:4-121:12.) Berkley ultimately charged $16,500 for his representation in the Austin case and in the Regions Bank case from the beginning through trial. (Id. at 65:22-66:3.) Berkley continued his personal injury practice while representing Williams. (Id. at 31:7-31:8.)

After the trial, Berkley filed a post-judgment motion. (Id. at 34:6-34:7.) The Chancery Court denied the motion. (Id. at 34:12.) At that point, the trial fee was exhausted, and the Regions Bank appeal began. (Id. at 34:14.) According to Berkley, he told Williams that he would charge the "market rate" for the appeal because he did not know how long it would take. (Id. at 34:21-34:24.) Berkley had handled only three other appellate cases in Tennessee. (Id. at 78:7-78:11.) He filed the appeal on January 17, 2013. (Id. at 35:1-35:2; Exhibit 2, 1.) Briefing was completed around September 2013. (D.E. No. 94, 42:23-42:24.) The Tennessee Court of Appeals affirmed the trial court's judgment. (Id. at 79:4-79:6.)

After the $6,000,000 judgment had been entered, the Chancery Court ordered Williams to transfer title to his house to Regions Bank. (Id. at 33:24-34:5.) In January 2013, while the appeal was pending, Regions Bank filed a Forcible Entry and Detainer ("FED") action in the General Sessions Court to obtain possession of the house. (Id. at 35:1-35:6.) Representing Williams and

his three family members, Berkley argued that the General Sessions Court did not have jurisdiction while the case was in Chancery. (See id. at 35:6-35:9.) The General Sessions Court denied Berkley's motion. (Id. at 35:10-35:11.)

On appeal of the FED action, Williams would have had to post a bond equivalent to a year of rent to prevent the house from being detained. (Id. at 36:14-36:19.) Williams could not afford the bond. (Id. at 36:19-36:20.) Berkley began the Writ of Certiorari action to avoid the statutory bonding requirement for an appeal. (Id. at 36:21-37:7.) The court initially set a $500 bond, but on request from Regions Bank the court increased the bond to $150,000. (Id. at 37:5-37:20.) Berkley filed a motion to withdraw from the Writ of Certiorari action in December 2013. (Id. at 98:13-98:18.) However, Berkley represented Williams through oral argument, which concluded in January 2014, and the motion for rehearing, which was filed in February or March 2014. (Id. at 97:24-98:3.)

In the Regions Bank appeal, Berkley represented Williams, People's Choice, Kimberlee Williams, Alexis Williams, and Chazz Bartley. (Id. at 76:22-76:25.) Berkley testified that he spent about 95% of his time working on issues for Williams. (Id. at 76:13-76:25.) In the FED action, Berkley represented Williams, Kimberlee Williams, Alexis Williams, and Chazz Bartley. (Id. at 79:12-79:15.) The Writ of Certiorari action replaced the appeal

of the FED action, and Berkley represented the same parties. (See 80:10-80:22.)

Berkley represented Williams and People's Choice in the Criminal action. (See id. at 39:2-39:3; 68:9-68:14.) Berkley began representing Williams on January 9, 2012, because Williams could not be released on bond until an attorney had made an appearance for him. (Id. at 38:2-38:8; Exhibit 3, 1.) Berkley had not previously tried a felony case in a Tennessee court. (D.E. No. 94, 69:1-69:8.)

The criminal trial was "heating up" from June through August 2013. (Id. at 37:24-37:25.) Berkley represented Williams through his trial, which resulted in a hung jury. (Id. at 42:5-42:8.) The trial began with jury selection on October 7, 2013, and ended with the hung jury on October 13, 2013. (Exhibit 3, 3.) After the trial, on November 6, 2013, Berkley moved to withdraw because Williams had not paid him. (D.E. No. 94, 70:10-70:24; Id. at 124:8-124:10.) The Criminal Court granted that motion when a different lawyer appeared for Williams. (Id. at 70:15-70:17.) Berkley testified that he moved to withdraw "before I am certain I sent [Williams] an invoice." (Id. at 71:22-71:25.)

Berkley testified that a white collar criminal defense attorney's hourly rates are significantly higher than the rates in § 1983 or employment cases. (Id. at 177:8-177:18.) Berkley

initially believed that the market rate for his services was $500 an hour based on the attorney's fees awarded in an election law case.  (See id. at 118:16-118:17.)  Berkley testified, based on his "study and practice", that the reasonable hourly rate for his services was $350 an hour.  (Id. at 54:17-54:21.)  Berkley never testified about reasonable hourly rates for paralegals.

Berkley introduced, as Exhibit 1, the invoice he sent to Williams.  (See id. at 45:8-47:16.)  The document was dated December 5, 2012, but Berkley testified that the document was prepared on December 5, 2013, and that he submitted it to Williams at some point that year.  (D.E. No. 94, 46:1-46:5.) Exhibit 1 covered the Regions Bank appeal, the FED action, the Writ of Certiorari action, and Alexis Williams' bankruptcy action.  (Exhibit 1.)  Berkley initially sought payment for 89.3 hours of his time, and 110 hours of his paralegal's time. (Exhibit 1, at 4.)  Berkley also submitted, as Exhibit 2, a modified version of Exhibit 1 that removed the time for Alexis Williams' bankruptcy action and reduced the FED time by 75% because Williams was only one of the four people who benefited from it.  (D.E. No. 94, 46:17-48:6.)  Those modifications are handwritten reductions.  (See Exhibit 2.)  Berkley seeks to recover for 23.25 hours of time he spent on Williams' civil cases.  (Exhibit 2, at 4.)  He did not reduce the hours claimed for his paralegal in Exhibit 2.  (See id.)  Berkley testified

that, because his paralegal's hours were block-billed, there was no way to determine from Exhibit 2 what matters she worked on in the civil cases. (D.E. No. 94, 103:22-104:5.) Berkley never testified about how his paralegal's hours should have been allocated in the civil cases. Berkley testified that the total value of the services on Exhibit 2 was 27,937.50. (Id. at 59:20-59:23; Exhibit 2.)

Berkeley submitted, as Exhibit 3, the invoice he sent to Williams sometime in 2014 for the Criminal action. (D.E. No. 94 50:11-51:19.) Berkley testified that the total value of the services on Exhibit 3 was $59,115. (Id. at 59:24-60:3; Exhibit 3.) He testified that he might have sent it to Williams on March 19, 2014, but he is sure he sent the invoice by September 2014. (D.E. No. 94, 50:20-50:11.) He testified that he prepared an invoice in March 2014. (Id. at 51:3-51:6.) Exhibit 3 contains a handwritten modification, reducing Berkley's paralegal's hourly rate from $200 an hour to $180 an hour. (Exhibit 3, at 4.) Berkley says he worked 132.9 hours for Williams in the Criminal action. (Id.) He says his paralegal worked 70 hours. (Id.) Berkley's paralegal is his wife. (D.E. No. 94, 102:22-102:25.) Her time on both invoices is block-billed. (Id. at 103:22-103:25.)

Berkley did not keep time records contemporaneously. (Id. at 99:19-99:23.) He reconstructed the time when he prepared the

invoices. (Id. at 99:24-100:2.) He used the same process to
create them. (See id. at 49:15-49:16.) Berkley reviewed public
records to see how many court appearances and motions he handled
for Williams. (Id. at 49:16-19.) He reviewed his correspondence
with Williams. (Id. at 49:19-49:24.)

Williams testified that he gave Berkley his Rolex watch and
BMW because he knew Berkley needed a car and liked Williams'
watch. (Id. at 152:10-152:20.) Williams testified that the
Rolex watch was worth $4,500 "[b]ecause new, they run at eight
grand." (Id. at 153:9-153:11.) Williams was not certified as
an expert, and he did not provide the basis for his conclusion
about the cost of the specific watch. Berkeley testified that
the Rolex was not "fully marketable" because it did not have
documentation. (Id. at 53:10-53:12.) A photograph of the watch
was admitted as Exhibit 6. (Id. at 113:22-114:5.)

Williams testified that he gave Berkley his BMW. (Id. at
153:25-153:2.) Williams introduced the bill of sale at trial as
Exhibit 5. (Id. at 154:2-154:9.) It includes his handwritten
"selling price" based on the "NADA book". (D.E. No. 94, 154:9-
154:20.) The bill of sale lists the selling price as $19,000.
(Exhibit 5.) The NADA book was not admitted, nor was any other
evidence of the value of the BMW. Berkley testified that he
could not obtain title to the BMW because it was not in Williams'

name.  (D.E. No. 94, 54:12-54:14.)  Williams testified that he

gave Berkley the title to the BMW.  (Id. at 154:25-155:1.)

## IV.  Conclusions of Law

In Tennessee,

A quantum meruit action is an equitable
substitute for a contract claim pursuant to which a
party may recover the reasonable value of goods and
services provided to another if the following
circumstances are shown:

(1) there is no existing, enforceable contract between
the parties covering the same subject matter;

(2) the party seeking recovery proves that it provided
valuable goods or services;

(3) the party to be charged received the goods or
services;

(4) the circumstances indicate that the parties to the
transaction should have reasonably understood that the
person providing the goods or services expected to be
compensated; and

(5) the circumstances demonstrate that it would be
unjust for a party to retain the goods or services
without payment.

Swafford v. Harris, 967 S.W.2d 319, 324 (Tenn. 1998) (citing

Castelli v. Lien, 910 S.W.2d 420, 427 (Tenn. Ct. App. 1995), and

Pascall's, Inc. v. Dozier, 407 S.W.2d 150, 154 (Tenn. 1966)).

### A. Unclean Hands

Williams argues that the doctrine of "unclean hands"

precludes Berkley from recovering under the equitable remedy of

quantum meruit.  "The doctrine is derived from the equitable

maxim, 'He who comes into equity must come with clean hands.'"

_Coleman Mgmt., Inc. v. Meyer_, 304 S.W.3d 340, 351 (Tenn. Ct. App. 2009), quoting _Segal v. United Am. Bank_, No. W2004-02347-COA-R3-CV, 2005 WL 3543332, at *4 (Tenn.Ct.App. Dec.28, 2005). Quantum meruit is an equitable remedy, and the doctrine of "unclean hands" applies. _Castelli_, 910 S.W.2d at 428. Courts applying Tennessee law may decline to grant equitable relief "to parties who have willfully engaged in unconscionable, inequitable, immoral, or illegal acts with regard to the subject matter of their claims." _In re Est. of Boote_, 265 S.W.3d 402, 417 (Tenn. Ct. App. 2007). "Any willful act regarding a litigated matter which would be condemned and pronounced as wrongful by fairminded persons is sufficient to trigger the doctrine of unclean hands." _Id._ at 417 n. 26.

In an unpublished opinion, the Tennessee Court of Appeals concluded that the doctrine of "unclean hands" did not apply to an attorney seeking recovery in quantum meruit when there was no evidence of negligent representation or unconscionable, inequitable, or immoral behavior during the representation. _McDonnell Dyer, P.L.C. v. Select-O-Hits, Inc._, No. W2000-00044-COA-R3CV, 2001 WL 400386 at *11 (Tenn. Ct. App. Apr. 20, 2001). In that case, the plaintiff's recovery was reduced because the fee the plaintiff claimed was excessive. _Id._ at 4-7.) Despite reducing the plaintiff's recovery, the Tennessee Court of Appeals declined to apply the "unclean hands" doctrine. _Id._ at 11.

13

Williams has not proved that Berkley has "unclean hands." Williams' argument is based entirely on Berkley's original fee request of $500 an hour. (<u>See</u> D.E. No. 94, 118:16-118:17.) The Court agreed with Williams, in the context of Williams' motion for summary judgment, that the $500 an hour fee Berkley charged was unreasonable. (D.E. No. 61, 21.) However, Williams fails to prove that Berkley acted in an unconscionable, inequitable, immoral, or illegal manner in seeking that fee. "Unclean hands" does not bar recovery.

## B. Valuable Services

Berkley is not entitled to recover in quantum meruit because he did not prove the value of the services he provided to Williams.

The amount recovered in quantum meruit is "limited to the value of the goods or services, and not their contract price." <u>Forrest Const. Co., LLC v. Laughlin</u>, 337 S.W.3d 211, 227 (Tenn. Ct. App. 2009). The reasonable value of services is based on the "customs and practices prevailing in that kind of business." <u>Id.</u> at 228 (quoting <u>Lawler v. Zapetal</u>, 679 S.W.2d 950, 955 (Tenn. Ct. App. 2009) (quoting <u>Chisholm v. Western Reserves Oil Co.</u>, 655 F.2d 94, 96 (6th Cir. 1981)). A plaintiff may not recover in quantum meruit "without some proof of the reasonable value of the goods or services." <u>Castelli</u>, 910 S.W.2d at 428. An estimation of the value of goods or services may suffice. <u>Id.</u>

The plaintiff has the burden of establishing the value of the goods and services rendered. ICG Link, Inc. v. Steen, 363 S.W.3d 533, 547 (Tenn. Ct. App. 2011).

In quantum meruit actions for attorney's fees, Tennessee courts rely on the Tennessee Rules of Professional Conduct to determine reasonable fees. See Mitch Grissim & Associates v. Blue Cross & Blue Shield of Tennessee, 114 S.W.3d 531, 538 (Tenn. Ct. App. 2002); Connors v. Connors, 694 S.W.2d 672, 676 (Tenn. 1980); Adams v. Mellen, 618 S.W.2d 485, 489 (Tenn. Ct. App 1981). The Tennessee Rules of Professional Conduct list the following ten factors to consider in determining a reasonable fee:

(1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;

(2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment by the lawyer;

(3) the fee customarily charged in the locality for similar legal services;

(4) the amount involved and the results obtained;

(5) the time limitations imposed by the client or by the circumstances;

(6) the nature and length of the professional relationship with the client;

(7) the experience, reputation, and ability of the lawyer or lawyers performing the services;

(8) whether the fee is fixed or contingent;

(9) prior advertisements or statements by the
lawyer with respect to the fees the lawyer charges;
and

(10) whether the fee agreement is in writing.

Coleman v. Coleman, No. W2012-02183, 2013 WL 5308013, at *13-14
(Tenn. Ct. App. Sept. 19, 2013) (citing Tenn. Sup. Ct. R. 8, R.
Prof'l Conduct 1.5(a), and Connors, 594 S.W.2d at 676); Johnson
v. Hunter, No. M199800314COAR3CV, 1999 WL 1072562 (Tenn. Ct.
App. Nov. 30, 1999).

The Court decided on summary judgment that $500 an hour was
not a reasonable rate for Berkley's services. (D.E. No. 61, 16-
21.) Berkley fails to prove that $350 an hour is a reasonable
fee, that his total fee request is reasonable, or what a
reasonable fee would be.

First, Berkley's time is an after-the-fact reconstruction.
His representation of Williams did not require an unusual
commitment of time and labor and did not involve questions of
law that were particularly novel or difficult. Berkley seeks
compensation for 23.25 hours he spent on Williams' civil cases,
180 hours his paralegal spent on Williams' civil cases, 132.9
hours he spent on Williams' Criminal action, and 180 hours his
paralegal spent on Williams' Criminal action. (See Exhibit 2;
Exhibit 3.)

Second, Berkley was not precluded from other employment while representing Williams. Berkley testified that he maintained his personal injury practice while representing Williams. (D.E. No. 94, 31:7-31:8.)

Third, Berkley fails to prove the fees customarily charged for the services he provided Williams. In this case, that factor is significant. Berkley never testified about a reasonable fee for paralegal services. He asserts that $350 an hour is a reasonable attorney's fee. (D.E. No. 94, 56:24.) Berkley testified that his services are worth $350 an hour based on the rate he has submitted to courts in minor settlements and divorce cases. (Id. at 57:4-57:13.) When Berkley tried Williams' criminal case, Berkley had never handled a felony criminal trial in Tennessee. (See id. at 69:9-69:15.) Berkley had handled three appeals in Tennessee before Williams' appeal. (See id. at 78:7-78:10.)

Berkley fails to provide sufficient evidence to prove the fees customarily charged in the locality for similar legal services. Berkley testified that he has been awarded an hourly fee of $350 in minor settlements and § 1983 cases. (Id. at 115:7-115:14.) He also testified that $12,500 is his standard flat fee for a trial. (Id. at 33:5-33:13.) Berkley provided no evidence of the hourly rates customarily charged for similar actions in Memphis. He did testify that he believes white-collar

17

criminal defense fees are significantly higher than fees for §
1983 or employment cases. (Id. at 177:8-177:18.) Berkley did
not introduce any evidence of the prevailing legal fees in
similar appellate, criminal, or civil actions. Without that
information, the Court cannot determine whether $350 an hour
represents a reasonable attorney's fee for the four different
actions at issue in this case. Berkley's assumption appears to
be that $ 350 an hour is a reasonable rate for the appeal of a
Chancery action in the Court of Appeals, an FED in the General
Sessions Court, and a jury trial in the Criminal Court.

Berkley's testimony about the fees he charges in other cases
is not sufficient to establish the fees charged for similar
services. Berkley's representation of Williams did not include
§ 1983, divorce, minor settlement, or personal injury. Berkley's
testimony did not establish the fees customarily charged by
attorneys in his market for similar services. He addressed only
fees he had been awarded.

Fourth, the amount at issue in Berkley's representation of
Williams was significant, but the results of his civil
representation were not good. The Regions Bank appeal involved
a judgment of $6,000,000. (Id. at 33:23-34:5.) The appeal was
unsuccessful, as was Berkley's representation of Williams in the
FED action and Writ of Certiorari action. (See id. at 79:4-
79:6; 35:10-35:11; 83:8-83:10.) Berkeley did obtain a positive

result in the Criminal action.  He secured a hung jury.  (D.E. No. 91, 4.)

Fifth, there is no indication that Williams or the circumstances imposed any unusual time limitations on Berkley.

Sixth, Berkley represented Williams from 2008 to 2014.  (See D.E. No. 94, 27:1-27:4; 50:11-51:19.)

Seventh, Berkley's experience, reputation, and ability are not exceptional in the areas of law in which he represented Williams.  Berkley has practiced law since 1996.  (Id. at 25:24-25:25.)  He is not, however, experienced in handling the types of cases he handled for Williams.  Berkley had never handled a felony criminal trial in Tennessee.  (Id. at 69:1-69:8.)  He had handled only three civil appeals in Tennessee.  (Id. at 78:7-78:11.)  Berkley testified that his practice has primarily consisted of § 1983 excessive force claims, minor settlements, and personal injury cases.  (See Id. at 26:21-26:24.)  Berkley failed to prove that an attorney without much experience in the areas in which he represented Williams would be able to charge the same rate as an experienced attorney.

Eighth, Berkley did not have an enforceable contract with Williams to provide legal services.  (D.E. No. 91, 4.)

Ninth, Berkley's fees in his prior representations of Williams differ substantially from the fees he ultimately charged Williams for the civil and criminal matters at issue here.  In

Berkley's initial representation of Williams in the Austin case and the Regions Bank case, Berkley charged a total of $16,500 in flat fees. (D.E. No. 94, 65:22-66:3.) In his invoices to Williams, Berkley sought recovery for services by the hour, and he sought substantially higher fees. (See Exhibit 1; Exhibit 2; Exhibit 3.)

Tenth, Berkley's fee arrangement with Williams was not in writing. (D.E. No. 91, 4.)

Berkley has not met his burden. The factors set forth in the Tennessee Rules of Professional Conduct do not support his claim for fees. His request is not reasonable. Applying the simpler, but more objective, hourly-rate standard, Berkley has failed to establish that $350 is a reasonable hourly rate. He has failed to establish what a reasonable hourly rate would be. Absent proof of the reasonable value of the services rendered, Berkley cannot recover in quantum meruit.

### C. Receipt of Services

#### 1. Time Records

To prove the services Williams received, Berkley must establish the time spent on Williams' behalf. An estimation may suffice. Castelli, 910 S.W. 2d at 428 ("Courts will not award quantum meruit recoveries without some proof of the reasonable value of goods or services . . . but the required proof may be an estimation of the value of the goods and services"). Although

an estimation may suffice, Berkley's invoices are not sufficient. He did not record his time contemporaneously with the work. (See D.E. No. 94, 99:19-99:23.) The time was reconstructed months and in some cases over a year after the fact. (Id. at 99:24-100:2.) The invoices are not a reliable estimation of the time spent.

At issue is Berkley's representation of Williams in the Regions Bank appeal, FED action, Writ of Certiorari action, and Criminal action. (D.E. No. 91, 1-2.) In none of those cases, did Berkley keep contemporaneous records of the time worked. (D.E. No. 94, 99:19-99:23.) When Berkley asked for payment, he reconstructed the time and provided Williams with the invoices. (Id. at 99:24-100:2.) The combination of Berkley's testimony and his exhibits is not sufficient to establish the time spent representing Williams. Without sufficient time records or some other basis for a reasonable estimation, Berkley is not entitled to recover in quantum meruit.[I]

### 2. Allocation of Time

---

[I] The parties also dispute whether the Rolex Watch and the BMW that Williams gave Berkley constituted accord and satisfaction, or otherwise offset Berkley's recovery. Because Berkley is not entitled to recover in quantum meruit, the Court need not determine whether there was accord and satisfaction. Neither party proved the value of the watch or the car at trial. Whatever the value, because Berkley cannot recover, there is nothing to offset.

Berkley did not show how much time he devoted to work for Williams and how much he devoted to the other parties he represented. As noted, a necessary element of a quantum meruit action is that "[t]he party to be charged received the goods or services." Swafford, 967 S.W.2d at 324.

Berkley cannot recover in quantum meruit from Williams for services Williams did not receive. Berkley represented Williams, People's Choice, Kimberlee Williams, Alexis Williams, and Chazz Bartley in the Regions Bank appeal. (D.E. No. 94, 76:7-76:12.) Berkley represented Williams, Kimberlee Williams, Alexis Williams, and Chazz Bartley in the FED action. (Id. at 79:12-79:15.) The Writ of Certiorari action was essentially the appeal of the FED action. (See id. at 80:13-80:15.) In the Criminal action, Berkley represented both People's Choice and Williams. (See id. at 67:3-67:7.)

Berkley testified that he removed the time for the Alexis Williams bankruptcy action, which is no longer at issue, and reduced the FED and Writ of Certiorari time to account for the benefit others received. (D.E No. 94, 46:17-46:23.) He also testified that over 90% of the Regions Bank appeal dealt with Williams. (Id. at 77:15-77:16.) Berkley provided no other proof to show how the benefit of the services rendered was divided among the various parties.

Berkley's testimony compounds the difficulty of estimating the services allocable to Williams. Berkley attempted to estimate the time spent after the fact based on his guesses about how long the work would have taken. He later modified his after-the-fact estimate by attempting to allocate time among the parties, whose interest in the various cases the Court is unable to determine. Berkley is only able to recover from Williams for the benefit Williams received. Berkley failed to provide a reasonable estimate of the time spent performing services for Williams.

## V.    Conclusion

For the foregoing reasons, Berkley's claim against Williams for quantum meruit is **DENIED**. Judgement will enter for Defendant.

SO ORDERED this 14th day of July, 2021.

/s/ Samuel H. Mays, Jr.
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE